**John H. FOSS, Plaintiff–Appellant,**

v.

**Tommy G. THOMPSON,\* Secretary, Health & Human Services, Defendant–Appellee.**

**No. 99–35956.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 2000

Filed March 16, 2001

---

\* Tommy G. Thompson is substituted for his predecessor, Donna Shalala, as Secretary of Health and Human Services. Fed. R.App. P. 43(c)(2).

William R. Goode, Portland, Oregon, for the plaintiff-appellant.

Herbert C. Sundby, Assistant United States Attorney, Portland, Oregon, for the defendant-appellee.

Before: KOZINSKI and KLEINFELD, Circuit Judges, and SCHWARZER,** Senior District Judge.

Opinion by Judge SCHWARZER; Dissent by Judge KLEINFELD

** The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

SCHWARZER, Senior District Judge:

John Foss, a Civil Service employee with the Indian Health Service (IHS), lost his job during a reduction in force (RIF). He complained of discrimination on the basis of race, sex, and age when his position was abolished and he failed to obtain another position through the Civil Service bumping process. After unsuccessfully challenging his separation from federal service before the Merit System Protection Board (MSPB) and appealing his discrimination claims to the Equal Employment Opportunity Commission (EEOC), Foss filed this action in the district court. We must decide whether the district court correctly granted summary judgment on the ground that Foss failed to make a prima facie case of sex, race, or age discrimination.

## STATEMENT OF FACTS

At the time of his separation, Foss was a sixty-two year old white male employed for more than twenty years as a social worker at the IHS's Portland Area Office (PAO). In 1996, the PAO planned a reorganization responsive to federal administrative reduction directives and tribal contracting and compacting. As a part of the reorganization, the PAO planned a RIF which would eventually abolish five Civil Service positions. One of those positions was Foss's social worker position, some of its functions having been assumed by the business office and others being no longer required. In February 1996, Foss received a notice from the PAO that he would be separated from federal service as a result of the RIF.

In compliance with RIF regulations, the PAO created a retention register which listed all Civil Service employees' competitive levels and service computation dates (seniority), and accounted for excepted service tenure groups and Indian preferences. Because Foss, a GS–0185–12 Social Worker, was the only person in his com-petitive level, abolition of his position released him from his competitive level.

During a RIF, a person whose position is abolished has a right to bump into a position for which he is qualified if the position is held by another person less senior. Foss sought to bump into Martha Stuker's position. Her position, created in 1990, was classified in 1993 as a Managed Care Coordinator/Nurse Specialist. The applicable job description stated that "[i]t is desirable that the incumbent possess a minimum of [a] Bachelor of Science in Nursing degree." Because Foss did not have a nursing degree, the PAO denied his request to bump Stuker.[1]

In April 1996, Foss received notice of his separation from employment. Two other employees also were separated in the RIF: Richard Palmer, a Native American man, and Michelle Stevens, a Native American woman. J. Mike Wood, a Native American man, also held a position that was abolished. He avoided separation by applying for a vacant position at a lower Civil Service grade. Foss sought only assignment to the two positions described above and did not apply for a vacant position.

## PROCEDURAL BACKGROUND

Foss filed a complaint with the MSPB. An Administrative Law Judge affirmed the agency's action, and the MSPB denied Foss's petition for review. Foss appealed his discrimination claims to the EEOC, which rejected them. Foss then filed the instant action in the district court and the court granted defendant's motion for summary judgment. We have jurisdiction of the appeal pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1291 and affirm.

■ We review the summary judgment *de novo. See Washington v. Garrett*, 10 F.3d 1421, 1428 (9th Cir.1993). Viewing the evidence in the light most favorable to Foss we must determine whether there

---

1. The PAO also denied Foss's request to bump into Susan Sheoships' position of Business Office Manager. Foss concedes that Sheo-ships had seniority over him and does not challenge this decision.

exists any genuine issue of material fact and whether the district court correctly applied the relevant substantive law. *See id.*

## DISCUSSION

### I. DELEGATION OF AUTHORITY

■ The district court upheld the decision of the MSPB as not arbitrary or capricious and supported by substantial evidence. Foss does not challenge that ruling. On appeal he contends only that the PAO exceeded its delegation of authority when it separated Foss without giving the agency headquarters the thirty days' notice required by the delegation letter. Because he did not raise this issue in the district court, we will not for the first time consider it on appeal. *See Marbled Murrelet v. Babbitt,* 83 F.3d 1060, 1063 (9th Cir.1996).

### II. DISPARATE TREATMENT BASED ON RACE AND AGE

■ Foss contends that he produced evidence showing that the PAO intentionally discriminated against him on the basis of race and age. First, Foss asserts that the PAO placed a similarly situated Indian male, J. Mike Wood, in a vacant position and, second, that he was denied his election for an early buy-out by a manager who knew his position would be abolished.

With respect to the first claim, Foss concedes that he did not seek any position other than the two described above. Wood, in contrast, applied for and was assigned a vacant position. The transfer required Wood to take a demotion from GS–14 to GS–13. Foss, who was only a GS–12, was not eligible for the position taken by Wood and concedes that the two men were not competitors for that position. What Foss's claim comes down to is that he, unlike Wood who was a Native American, was not told that he could apply for a vacant position. But Foss does not contend, and there is no evidence, that information about vacant positions was not available to the employees and that he himself had no knowledge of them.

As for the early buy-out claim, Foss submitted an application a year before the RIF. The evidence, viewed in the light most favorable to Foss, establishes that Daniel Madrano, who was in charge of personnel, told him headquarters had turned down his request but that Madrano did not know why. Any inference that the decision was motivated by age or race animus would be pure speculation.

Because Foss has presented no facts to indicate that others outside of his protected class were treated more favorably, he has failed to make out a prima facie case of age or race discrimination. *Cf. Garrett,* 10 F.3d at 1434.

### III. GENDER DISCRIMINATION

#### A. Disparate Impact

The PAO denied Foss's request to bump into the Managed Care Coordinator position occupied by Martha Stuker because he did not possess a nursing degree. Foss contends, first, that because men are statistically less likely to have a nursing degree than women, the requirement has a disproportionately negative impact on men, and, second, that the nursing degree requirement is unnecessary for the position. Because his first contention fails to support a prima facie case, we do not reach the second.

The district court, while acknowledging that the majority of nurses are women, held that the proper analysis turns on the percentage of men and women who are otherwise qualified but lack a nursing degree. It found that because Foss failed to come forward with the requisite statistics, he did not make out a prima facie case.

■ We agree with the district court's analysis. It is well established that to make out a prima facie case of disparate impact, the proper comparison is based on the "composition of the qualified . . . population in the relevant labor market." *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 650, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (alteration in original) (quoting

*Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 308, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977)); *see also New York City Transit Authority v. Beazer,* 440 U.S. 568, 585–86, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979) (rejecting plaintiffs' statistic because "it tells us nothing about the class of otherwise-qualified applicants and employees"); *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 482–83 (9th Cir.1983) ("If special skills are required for a job, the proxy pool must be that of the local labor force possessing the requisite skills."); *Cerrato v. San Francisco Cmty. Coll. Dist.,* 26 F.3d 968, 976–77 (9th Cir.1994). While *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), accepted general population statistics as evidence of the discriminatory impact of height and weight requirements on women, the Court later noted that evidence showing that such figures might not accurately reflect the pool of qualified job applicants undermines the significance of such figures. *Beazer,* 440 U.S. at 586 n. 29, 99 S.Ct. 1355.

Foss does not directly address this issue on appeal. In his brief he argues that approximately 90% of IHS employees on GS levels 4 through 17 in the 610 Nurse series were females; in the levels eligible to bump into the position, approximately 91% were females. He concludes that the nursing degree requirement makes it "highly unlikely" that the person bumping into the position would be male. Foss's showing, however, leaves it conjectural whether among the pool of those qualified for the Managed Care Coordinator position, the gender disparity resulting from the nursing degree requirement would be sufficiently significant to support a prima facie case. *See Bouman v. Block,* 940 F.2d 1211, 1225 (9th Cir.1991). Foss also contends that he himself was qualified (but for the lack of a nursing degree) but his qualification is not relevant to the issue. Finally, he argues that the only qualification needed to bump into the position was a GS–12 to GS–15 rating, but the argument is belied by the Managed Care Coordinator position description, which recites the extensive knowledge and experience requirements.

### B. Disparate Treatment

■ Foss also contends that the nursing degree requirement was specifically imposed to discriminate against him. The requirement was added in 1993 when the position was advertised to replace its first occupant, who was a nurse. This action took place three years before the RIF, without reference to Foss or any other male applicant for the job. Thus, the PAO's action raises no inference of discriminatory animus.

### CONCLUSION

For the reasons stated, the judgment is affirmed.

AFFIRMED.

KLEINFELD, Circuit Judge, dissenting:

I concur in all of the opinion except as to whether Foss established a genuine issue of fact as to disparate impact. On that issue, I respectfully dissent.

The Portland Area Office of the Indian Health Service had a reduction in force. Mr. Foss, a twenty year employee, sought reassignment into a less senior person's position. He was not allowed the reassignment because he was not a nurse. He argues that there is nothing about the position that needs a nurse's training, and nurses are so overwhelmingly female that this unnecessary and inappropriate job requirement has the effect of discriminating against males. The job Foss wanted was "managed care coordinator." A managed care coordinator does not perform nursing services for patients. Foss's evidence shows that: (1) eight out of ten Indian Health Service area offices have managed care coordinators who are not nurses; (2) he has served as acting managed care coordinator; and (3) after the person Foss tried to displace left for other reasons, the Portland office put two people in the posi-

tion, neither of whom had nursing degrees. Foss says that the nursing degree requirement came about simply because a person holding the managed care coordinator position when the job classification was written happened to have one.

The test for disparate impact discrimination is laid out by statute.[1] The statute provides that a disparate impact claim is established when:

> A complaining party demonstrates that [an employer] uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the [employer] fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity.[[2]]

So to establish a prima facie case of disparate impact, a plaintiff must: (1) identify the practice being challenged; (2) show disparate impact; and (3) prove causation.[3] The burden then shifts to the defendant to either: (1) discredit plaintiff's clam of disparate impact, as for example by demonstrating that plaintiff's own statistics do not show it; or (2) produce evidence that the practice is job related and consistent with business necessity.[4]

The majority does not quote the statute, but its discussion of statistics can only fit into the first step of the statutory analysis because the opinion holds that "Foss failed to make a prima facie case." That step requires the complaining party to demonstrate that the employer "uses a particular employment practice that causes a disparate impact on the basis of ... sex." The employment practice at issue is the requirement of a nursing degree. The majority applies the rule that the disparate impact must be shown with respect to the qualified population in the relevant labor market, and says that Foss's statistics do not show that the sex disparity in the relevant labor market is significant.[5] This is the issue on which we diverge.

Foss correctly argues that because only one position was at issue, and only two people, himself and the incumbent, were the labor market for filling it, our exception for an "extremely small universe" applies.[6] We do not require statistics in such a case because they would be meaningless. The statute itself does not speak in statistical terms. The statutory prima facie case requires a "disparate impact on the basis of·sex," which would ordinarily be statistical, but not necessarily. Foss cites the EEOC guideline that says that if a requirement causes the selection rate for one sex to be less than ⅘ of the rate for the other, the EEOC will regard the under 80% rate as "evidence of adverse impact."[7] Foss presented statistics showing that 88% of the nurses employed by the Indian Health Service are female, that 91% of the nurses who would be eligible to "bump" into the position were female, and that the labor market for "bumping" in a "RIF" was limited to people who worked for the Indian Health Service. Thus the job requirement of a nursing degree limits those eligible for the position to a pool that is 91% female.

If an arbitrary requirement limits the job to a pool that is 91% one sex, while

**1.** See 42 U.S.C. § 2000e–2(k)(i).

**2.** Id.

**3.** See Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir.1990).

**4.** See id.·

**5.** Maj. Op. at 1134–35.

**6.** See Morita v. Southern California Permanente Medical Group, 541 F.2d 217, 220 (9th Cir.1976).

**7.** See 29 C.F.R. § 1607.4D which provides in pertinent part:

> Adverse impact and the "four-fifths rule." A selection rate for any race, sex, on ethnic group which is less than four-fifths (⅘) (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact....

non-arbitrary job-related requirements would not, that would satisfy the statutory requirement for a prima facie case. The only thing Foss leaves out of his statistical case is the sex composition of IHS employees who could "bump" the incumbent were the nursing degree requirement absent. But he does present a proxy for this unknown number, by showing that a slight majority of the managed care coordinators are male in the Indian Health Service offices (all but two) that do not require a nursing degree. That supports the inference that with the nursing degree requirement, the position is largely limited to females, but without it, there would be a fairly even sex distribution among the relevant pool of Indian Health Service employees eligible for the job.

The majority opinion says that the inference that the nursing degree limits the eligibles to a pool substantially slanted to one sex is too "conjectural" to establish a genuine issue of fact.[8] With the requirement, the position could be expected to be filled by about 90% females and is in fact filled by 100% females. What is too conjectural is the counter inference that the majority opinion tacitly requires. If the nursing degree requirement were absent, then for the eligible pool to still be 90% female, the genuinely "job related … and consistent with business necessity" requirements would have to leave the qualified pool at about 90% female. Why should the pool of persons qualified to be a managed care coordinator be 90% female even without the challenged nursing degree requirement? That possibility seems unlikely on its face, and is belied by the evidence that in the offices without the nursing degree requirement, the position is filled by a mixed sex group, slightly more male than female.

The majority has invited me into a statistical discussion that makes the case seem more abstruse than it really is. The employer has a requirement for the managed care coordinator position (in this office but not most of its other offices) that effectively and practically limits the job to persons of one sex. With that requirement, nine out of ten people who can fill the job are limited to one sex. And 100% of the people who got the position in the Portland Area Office were of one sex. Without it, the sex distribution of those filling the job is pretty evenly balanced. That is enough to allow a trier of fact to infer that the requirement "causes a disparate impact on the basis of … sex." As for whether the requirement of a nursing degree is arbitrary, like requiring high school football experience to be a nurse, or job related, like requiring a law degree to be a public defender, it is the employer's burden to show that, and the majority errs by not allowing the case to reach that issue.[9]

8. Maj. Op. at 1135.

9. Cf. *Washington v. Garrett,* 10 F.3d 1421, 1433 (9th Cir.1993) ("[T]here will always be a question for the factfinder once a plaintiff establishes a prima facie case and raises a genuine issue as to whether the employer's explanation for its action is true.").