**Dianne CRAWFORD, Plaintiff,**

v.

**MCI WORLDCOM COMMUNICATIONS, INC., a corporation; Does 1 though 100, inclusive, Defendants.**

No. 00–CV–2089 W (RBB).

United States District Court, S.D. California.

Aug. 13, 2001.

Eugene S. Thompson, Oden, Greene, Murray & Thompson, San Diego, CA, for plaintiff.

Christine A. Samsel, Brett Thomas, Akin, Gump, Strauss,, Hauer & Feld, LLP, Los Angeles, CA, for defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHELAN, District Judge.

On May 18, 2001 Defendant MCI Worldcom Communications, Inc. ("Defendant" or "MCI Worldcom") brought this motion for summary judgment, or in the alternative, for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Dianne Crawford ("Plaintiff") opposes. All parties are represented by counsel. The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1).

### I. *BACKGROUND*

The Court and the parties are familiar with the facts of this case and they need limited description here. Plaintiff is an African–American female formerly employed by Defendant MCI Worldcom. During Plaintiff's employment, plaintiff was one of five Pacific Region Sales Directors. Plaintiff was responsible for sales operations in San Diego, the Inland Empire and Central Valley.

As a Sales Director, Plaintiff was required to achieve certain sales performance levels. Specifically, Defendant measures employee sales performance using two quota measures—Estimated Monthly Usage ("EMU") and New Billed Revenue ("NBR"). EMU is an expected future billings estimate based on new customers' service bills with their existing carriers. NBR is based upon the customers' actual billings once they contract with MCI Worldcom. Defendant uses NBR at its primary sales performance gauge. Sales Directors are expected to meet at least 100% of their EMU and NBR quotas.

In 1999 MCI Worldcom's Pacific Region registered very poor sales revenue. As a result, in November 1999 Lynn Coker ("Coker") became Pacific Region Sales Vice President taking over for Cardi Prinzi. As Pacific Region Sales Vice President, Coker supervised all Pacific Region Sales Directors including Plaintiff. Coker was expressly hired to improve the Pacific Region's declining sales performance.

When Coker arrived at MCI Worldcom, all five Pacific Region Sales Directors were not meeting their EMU and NBR quotas. Specifically, at the end of 1999, Plaintiff was ranked fourth out of the five Sales Directors in terms of sales performance.

In December 1999 Defendant initiated a Performance Improvement Plan ("PIP") requiring Plaintiff to increase her sales revenue. The PIP required Plaintiff to reach a 71% NBR quota in December, 83% in January, 90% plus in February and 100% in March. The PIP stated that if Plaintiff does not "have immediate and sustained improvement, [Plaintiff] [is] subject to disciplinary action which could include dismissal." (*Decl. of Christine Samsel, Ex. B at 56–57 and Ex. 29 attached thereto.*)

Thereafter, Plaintiff failed to meet the PIP's NBR quota for December (45.42%), January (45.9%) and February (49.66%). Coker encouraged Plaintiff to transfer to

another position in the company, but Plaintiff refused. Subsequently, in March 2000, Defendant terminated Plaintiff's employment.

This unlawful termination action followed. Plaintiff claims: (1) race discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) wrongful termination in violation of public policy; and (3) intentional infliction of emotional distress. Defendant now seeks summary judgment on each claim.

## II. *LEGAL STANDARD*

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir.1999) (recognizing that where material facts are undisputed, the court only decides the application of relevant law). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23, 106 S.Ct. 2548.

However, once the moving party meets this initial burden, the non-moving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir.1995) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."). Rather, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(e)).

When making this determination, all inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

Finally, "the district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified School Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001).

## III. *ANALYSIS*

Plaintiff contends that her termination from MCI Worldcom was based on impermissible race discrimination in violation of

California's Fair Employment and Housing Act ("FEHA"). The Court disagrees.

California's FEHA and Title VII both prohibit employment discrimination based on race. *See* CAL. GOV'T CODE § 12900 et seq.; 42 U.S.C. § 2000e et seq. The Court's analysis of Plaintiff's racial discrimination claim, although discussed in terms of Title VII, applies with equal force to Plaintiff's FEHA claim. *See Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 n. 2 (9th Cir.1997) ("[T]he test for determining whether there is discrimination under Title VII applies to FEHA claims as well.") (citation omitted); *see also Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1219 (9th Cir.1998) (noting that because FEHA mirrors federal law under Title VII, federal case law is instructive).

Title VII makes it unlawful for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of his employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may show a violation of Title VII "by proving disparate treatment or disparate impact, or by proving the existence of a hostile work environment." *See Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir.1991).

■■■ In order to survive a motion for summary judgment, a plaintiff in a Title VII case must first make out a prima facie case of race discrimination. *See Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir.1993). To establish a prima facie case under Title VII, a plaintiff must show: (1) she is a member of a protected minority; (2) she was performing her job in a satisfactory manner; (3) she suffered an adverse employment action; and (4) she was replaced by an individual outside the protected class with equal or inferior qualifications, that similarly-situated employees outside the protected class were treated more favorably or at least that her termination occurred under circumstances giving rise to an inference of race discrimination. *See Godwin*, 150 F.3d at 1220 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Once a plaintiff establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action taken. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

## A. PLAINTIFF CANNOT SHOW THAT SHE WAS PERFORMING HER JOB SATISFACTORILY [1]

■■ In this case, Plaintiff does not satisfy the second factor of the *McDonnell Douglas* test, i.e., that Plaintiff was performing her job satisfactorily. Plaintiff admits that Defendant MCI Worldcom uses New Billed Revenue ("NBR") as its primary sales performance gauge. (*See Pl.'s Opp'n* at 3.) Plaintiff further acknowledges that Sales Directors were required to meet at least 100% of their NBR quota. (*See Pl.'s Depo.* at 211:5–20.) However, it is undisputed that Plaintiff was not meeting her NBR quota. For example, Plaintiff's NBR performance in February 1999 was 59%, March 33%, April 40%, May 43%, June 29%, July 23%, August 21%, September 23%, October 45%, and November 45%. (*See Pl.'s Depo., Ex. 36 attached thereto.*) As the undisputed figures reveal, Plaintiff was falling far short of her performance goals throughout 1999.

Because of Plaintiff's poor performance, Defendant placed Plaintiff on a Perfor-

---

**1.** It is undisputed that Plaintiff is a protected class member (African–American) and suffered an adverse employment action under Title VII and FEHA. Thus, the Court's inquiry begins here.

mance Improvement Plan ("PIP") that lowered her December NBR quota to 71%, January to 83% and February to 90%. Plaintiff thereafter failed to meet the PIP's reduced NBR quota. Plaintiff's NBR performance was 45% in December, 46% in January and 50% in February. (*See Pl.'s Depo.* at 237:21–238:23 and *Ex. 29, 40 attached thereto.*) These numbers plainly reveal that Plaintiff performed considerably below Defendant's NBR requirement for *13 months* notwithstanding Defendant's reduction in the performance goals.[2]

Plaintiff attempts to create a genuine issue of material fact by pointing to a 1999 standard performance evaluation completed by Plaintiff; supervisor Lynn Coker. (*See Pl.'s Opp'n* at 6.) Plaintiff contends that "[s]ince the ... [evaluation] clearly states that [Plaintiff's] performance 'met the performance requirements and expectations,' it is interesting that [Defendant] now states that [Plaintiff's] performance was not satisfactory."

However, Coker completed Plaintiff's evaluation immediately after he replaced Cardi Prinzi ("Prinzi") as Regional Vice President. Although Coker admits to have completed Plaintiff's 1999 performance evaluation, Plaintiff's "meets expectations" review was based entirely on information obtained from Prinzi who was terminated because the Pacific Region performed poorly in sales. (*See Decl. of Eugene S. Thompson, Ex. D; Pl.'s Depo.* at 155:5–9.) In essence, Plaintiff's 1999 "meets expectations" performance evaluation, although completed by Coker's hand, was based largely on Prinzi's subjective input. The parties do not dispute that

Prinzi was terminated based on his region's poor performance. It follows that Prinzi's employee evaluations had little or no value in examining Plaintiff's performance levels.

Moreover the form itself is nothing more than a boilerplate evaluation on which several boxes were apparently checked off by Coker. The farm's "comments" section is notably silent. More importantly, Plaintiff expressly admits that Coker did not have enough information to properly evaluate her 1999 performance. (*See Pl.'s Depo.* at 151:17–22.) It is undisputed that Coker did not even join the Pacific Region until November 1999. Therefore, Coker can hardly be charged with properly evaluating Plaintiff's 1999 performance with only six weeks of team participation in 1999. In sum, the Court finds that Plaintiff's proffered evidence does not create a genuine issue of material fact as to Plaintiff's poor job performance.

Because no reasonable jury could find that Plaintiff was performing her job satisfactorily, Plaintiff's discrimination claim fails as a matter of law. *See Godwin,* 150 F.3d at 1220 (citing *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817).

### B. *PLAINTIFF'S TERMINATION DID NOT OCCUR UNDER CIRCUMSTANCES GIVING RISE TO AN INFERENCE OF RACE DISCRIMINATION*

■ Plaintiff also fails the fourth factor of the *McDonnell Douglas* test, i.e., that Plaintiff's termination occurred under circumstances giving rise to an inference of

---

**2.** Plaintiff counters that her low NBR is misleading because her Estimated Monthly Usage ("EMU") was taking five to seven months to be converted into NBR. (*See Pl.'s Opp'n* at 3.) In other words, Plaintiff contends that her low December 1999. March 2000 NBR (the PIP period) did not accurately reflect her true

NBR for these months. (*Id.*) However, Plaintiff provides no competent evidence supporting these factual assertions. Even assuming Plaintiff's contention is true, all Sales Directors were faced with this same delayed crediting problem—and therefore Plaintiff was not treated differently.

race discrimination. Plaintiff does not point to any probative evidence that similarly situated employees outside the protected class were treated more favorably, or at least that her termination occurred under circumstances giving rise to an inference of race discrimination. *See id.*

### 1. *PLAINTIFF WAS NOT TREATED LESS FAVORABLY THAN SIMILARLY SITUATED EMPLOYEES*

Plaintiff contends that she was treated less favorably from other Pacific Region Sales Directors, i.e., Chris Donnelly, Tracey Mueller, Debbie Bowen and Chris Butler.[3] Specifically, Plaintiff claims that she was the only Sales Director pressured to leave her position by Coker—her former supervisor. (*See Pl.'s Opp'n* at 7.) However, Plaintiff provides no competent evidence that Coker treated her less favorably than the other Sales Directors. For example, Chris Donnelly (a Caucasian male), the worst performing Sales Director, "felt [his] job was in jeopardy" after Coker told him that "you (Donnelly) had 60 days to improve your sales performance, but I (Coker) don't think it is possible." (*Donnelly Depo.* at 21:5–18.) Similar to Plaintiff's allegations, Coker clearly pressured Donnelly to leave his Sales Director position. In fact, Donnelly accepted a demotion to a Sales Manager position. Because Donnelly was given only 60 days to improve his sales performance, Coker actually treated Donnelly *worse* than Plaintiff who was given over 3 months to improve her weak sales performance.

Coker also counseled Tracey Mueller (a Caucasian female and the second best sales performer) about her weakening sales performance. Coker requested that Mueller go on a Performance Improvement Plan ("PIP") like Plaintiff, but Mueller stalled the process. (*See Walker Depo.* at 45:17–46:8.) Instead of improving her performance, Mueller requested and accepted a transfer/demotion to a Channel Manager position. (*See id.* at 11:16–19, 46:1–8; *Pl.'s Depo.* at 218:1–5.) Coker also asked Plaintiff to consider transferring to a Channel Manager position. (*See Pl.'s Depo.* at 217:16–18.) Plaintiff refused.

It is undisputed that Plaintiff and Mueller were both counseled about their poor sales performance and were offered a Channel Manager position transfer. This undisputed evidence establishes that both Sales Directors were treated virtually the same. More significantly, Plaintiff presents no evidence upon which a reasonable jury could rely to find otherwise. *See Foss v. Thompson,* 242 F.3d 1131, 1134 (9th Cir.2001) (summary judgment properly granted when plaintiff had no evidence that persons outside his protected class were treated more favorably). Thus, Plaintiff has failed to demonstrate that her termination occurred under circumstances giving rise to an inference of race discrimination.

### C. *DEFENDANT HAS ARTICULATED LEGITIMATE AND NONDISCRIMINATORY REASONS FOR PLAINTIFF'S ALLEGED DISCRIMINATORY CONDUCT*

 Even assuming Plaintiff had established a prima facie case (which Plaintiff

---

**3.** Sales Directors Debbie Bowen ("Bowen") and Chris Butler ("Butler") were not similarly situated employees here. Shortly after Coker's arrival, Bowen voluntarily transferred to a lesser position as a Sales Telecom Manager. (*See Pl.'s Depo.* at 101:17–21; *Coker Depo.* at 89:6–16.) Thus, as Plaintiff conceded, Coker did not have to address Bowen's poor sales performance. (*See Pl.'s Depo.* at 102:10–13.) As for Butler, he was the Pacific Region's top Sales Director based on December 1999 NBR figures. (*See Decl. of Lynn Coker* at 1.) Accordingly, Bowen and Butler were not similarly situated like Plaintiff (second worst sales performer).

has not), Defendant has articulated legitimate and nondiscriminatory reasons explaining Plaintiff's employment termination. As illustrated above, Defendant sufficiently rebuts the discrimination presumption with evidence demonstrating that Plaintiff was not performing her job satisfactorily. Specifically, Plaintiff repeatedly failed to reach her NBR quota from February 1999 to March 2000 when Plaintiff was ultimately released.[4] (*See Pl.'s Depo., Exs. 36, 40 attached thereto.*) Because Defendant has articulated a legitimate and nondiscriminatory reason explaining Plaintiff's termination, the burden shifts back to Plaintiff to prove Defendant's "proffered justification is merely a pretext for discrimination." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

### D. *PLAINTIFF DOES NOT PROVIDE SPECIFIC PROOF OF PRETEXT*

■ Where, as here, an employer articulates a legitimate and nondiscriminatory reason for the personnel decision taken, the presumption of discrimination "simply drops out of the picture," *St. Mark's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and the burden shifts back to Plaintiff to show that Defendant intentionally discriminated against her based on race. *See Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 918 (9th Cir.1996). That is, Plaintiff must establish that the reason proffered by the employer for the action taken is actually a pretext for discrimination. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089; *Smith v. Barton,* 914 F.2d 1330, 1340 (9th Cir. 1990). The Ninth Circuit has held that a plaintiff cannot create a genuine issue of pretext to survive a motion for summary

judgment by relying solely on unsupported speculations and allegations of discriminatory intent. *See Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989) (a bald assertion that a genuine issue of material fact exists does not preclude summary judgment). Rather, a plaintiff must produce "specific, substantial evidence of pretext." *See Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983); *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir. 1994); *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 458 (7th Cir.1999) (to avoid summary judgment, a plaintiff must produce evidence from which a rational trier of fact could infer that the defendant lied about its proffered reasons for failing to promote her or that the reasons had no basis in fact).

Here, Plaintiff has failed to produce any specific, substantial evidence of pretext to uphold her unlawful racial discrimination claim. Plaintiff attempts to raise a genuine issue for trial by citing several depositions suggesting that Plaintiff had a reputation as a good leader, team worker and was knowledgeable about Defendant's product. (*See Pl.'s Opp'n* at 11–13.) Plaintiff may in fact possess a great work reputation, but Plaintiff's reputation is irrelevant to the Court's analysis here. As previously stated, Defendant terminated Plaintiff based on her low NBR figures (second worst in the Pacific Region) and not based on her work reputation. *See Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir.1997) (citation omitted) ("It is axiomatic that an employer is free to set its own performance standards, provided such standards are not a 'mask' for discrimination."). There is no evidence before this Court which suggests the termination was based on pretext. Accordingly, the Court

---

**4.** Plaintiff concedes that Defendant uses New Billed Revenue ("NBR") as its primary sales

performance gauge. (*See Pl.'s Opp'n* at 3.)

finds that Plaintiff failed to show Defendant's alleged reason for her discharge was false, or that the true reason for Plaintiff's termination was a discriminatory one. Plaintiff's racial discrimination claim fails as a matter of law.

### E. *PLAINTIFF'S PUBLIC POLICY AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS ALSO FAIL*

Plaintiff admits that her intentional infliction of emotional distress and public policy claims are based on Plaintiff's racial discrimination cause of action. (*See Pl.'s Opp'n* at 2.) Plaintiff concedes that if her racial discrimination claim fails, then Plaintiff's remaining claims also fail. (*See id.*) The Court agrees. Having read and considered Defendant's opening brief, Plaintiff's non-opposition and Defendant's reply, the Court finds that Plaintiff's public policy and intentional infliction of emotional distress claims fail as a matter of law.

### IV. *CONCLUSION AND ORDER*

In light of the foregoing, the Court GRANTS Defendant's Motion for Summary Judgment. (Doc. No. 45–1.) The Court denies as moot Defendant's motion for partial summary judgment. (Doc. No. 45–2.) The Clerk of Court shall close the district court file.

**IT IS SO ORDERED.**