Filed 7/30/14  Ader v. Garfield Beach CVS CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TAMARA ADER, | |
| Plaintiff and Appellant, | G049897 |
| v. | (Super. Ct. No. RIC10000783) |
| GARFIELD BEACH CVS, LLC, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Riverside County, Daniel A. Ottolia, Judge.  Affirmed.

Law Offices of Victor L. George, Victor L. George and Wayne C. Smith for Plaintiff and Appellant.

Sidley Austin, Douglas R. Hart, Geoffrey D. DeBoskey and Sheryl K. Horwitz for Defendant and Respondent.

\*          \*          \*

Plaintiff and appellant Tamara Ader appeals from the judgment the trial court entered after granting defendant and respondent Garfield Beach CVS, LLC (CVS) summary judgment on Ader's complaint for age, race, and gender discrimination under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) and wrongful termination in violation of public policy. CVS argued, and the trial court agreed, Ader's claims failed as a matter of law because her poor job performance prevented her from establishing a prima facie case under the burden-shifting framework our Supreme Court has adopted for analyzing discrimination claims, and CVS fired Ader for the legitimate nondiscriminatory reason she failed to perform her store manager job adequately.

We affirm. Ader concedes CVS met its initial summary judgment burden by presenting evidence showing CVS fired Ader because she failed to perform her job adequately during the six months leading up to her termination. Ader also concedes she presented no direct evidence CVS unlawfully discriminated against her. In opposing CVS's summary judgment motion, Ader instead argued she presented sufficient circumstantial evidence to allow a reasonable trier of fact to infer CVS's stated reason for firing her was untrue or a pretext for unlawful discrimination.

As explained below, we conclude Ader failed to present sufficient evidence to establish a triable issue on whether CVS's stated reason for firing her was untrue or pretextual, or whether CVS nonetheless acted with a discriminatory animus in firing Ader for her poor job performance. Because we conclude CVS was entitled to summary judgment based on its showing it fired Ader for the legitimate nondiscriminatory reason she failed to perform her job adequately, we need not decide whether her poor job performance also prevented Ader from establishing a prima facie discrimination case.

2

# I

## FACTS AND PROCEDURAL HISTORY

Ader is a Caucasian female who began working for Sav-On Drug Stores (Sav-On) in 1982.  She started as part-time help and by 1994 worked her way up to store manager.  She continued in that position after CVS acquired Sav-On in 2006.

As a CVS store manager, Ader oversaw all the operations in her store, including the pharmacy and nonpharmacy retailer space, or "front-store" operations.  Her responsibilities included managing the store's merchandising and inventory; conducting daily "store walks" to assess the store and identify all necessary cleaning, stocking, and organizational tasks; prioritizing and delegating those tasks to store employees; ensuring the employees timely performed the tasks; controlling theft and inventory loss; training, supervising, and scheduling store employees; and managing payroll.

Wolfgang Schiefer was Ader's district manager and direct supervisor during her initial time with CVS.  He rated her performance as exceeding expectations and considered her to be in the "upper part" of the 17 store managers in his district.  Throughout her time with Sav-On and under Schiefer's supervision, Ader consistently received performance evaluations ranging from "meets expectations" to "above expectations."  In August or September 2008, Schiefer transferred Ader to the CVS store on Adams Street in Riverside, California (Adams store).  Four months later, Schiefer transferred to a new district closer to his home.

In January 2009, Marilyn Molina, a 44-year-old Latina female, took Schiefer's place as Ader's district manager.  At the time, Ader was 50 years old.  Molina held a meeting with all store managers in the district to discuss her expectations and CVS store standards.  In January and early February 2009, Molina also visited Ader's store five times to further discuss her expectations and CVS store standards.  On each occasion Molina found Ader's store did not meet standards for cleanliness, merchandising, and

3

inventory control, and Ader had failed to remedy the deficiencies Molina pointed out on her previous visits.

In early February 2009, Ader e-mailed Marshall Hayde, a CVS Regional Sales Manager and Molina's supervisor, and Chris Brown, CVS's Human Resources Business Partner, to express her concern about the demands Molina was making on Ader and the other store managers in her district. On behalf of several store managers, Ader requested a meeting with Hayde or Brown without Molina being present. Ader never received a response to her e-mail.

Approximately one week later, Ader's store received an unannounced inspection from Molina, Hayde, Brown, and Manisha Patel, CVS's Pharmaceutical Supervisor. Neither Hayde nor Brown had ever been to Ader's store during the three years she worked for CVS. Moreover, during her 23 years with Sav-on and three years with CVS, Ader contends it was "common practice" for a district manager to warn a store manager that a regional manager soon would visit the store.

During the 20- to 30-minute visit, the group found Ader's store to be in "total disarray" and well below CVS standards. Hayde later testified he remembered "the parking lot being filthy when we drove in with trash and debris and trash overflowing; . . . the store being generally very dirty with conditions, carpet not vacuumed; . . . very poor in-stock conditions in the seasonal aisle, as well as cosmetics; and . . . there was still Christmas up in the store on the sales floor and it was February; and . . . a warehouse delivery in the back room of the store that was approximately four to five days old that had not been touched." When the group asked Ader about her store's conditions, she had no explanation or plan to rectify the situation. Instead, she simply responded, "'I don't have time.'"

On the day following the visit, Molina issued Ader a formal performance write-up based on "Gross negligence on basic store operations and company standards." Molina identified 14 categories that required significant improvement, and also provided

4

Ader a work plan for rectifying the situation. Finally, the write-up explained it was the "[f]inal warning on poor job performance," and "[a]ny further instances of poor job performance or inability to do the job will result in termination." This was the first formal write-up Ader had ever received. She later testified the write-up accurately described the deficiencies with her store for the most part, but she thought the evaluation's overall tone exaggerated the store's condition. In opposing the summary judgment motion, Ader claimed the "contents within the write-up were extremely exaggerated and some allegations false," but she failed to identify a single exaggerated or false condition.

In response to the write-up, Ader asked Molina for permission to "use labor hours which were originally allotted to my Store 9849 but Molina refused to let me use those hours." Instead, Molina repeatedly counseled Ader on how to do her job properly. Molina also brought in at least four other employees, including two store managers, to work in Ader's store for an entire day to help correct the problems described in the write-up.

Molina returned to Ader's store about one week after the write-up, and after the additional crew of employees had cleaned up, restocked, and organized the store. Ader still had made little progress in rectifying the problems in the store. Molina returned the next day and provided Ader with a written counseling memo again describing what Ader should do to fix her store. Over the ensuing weeks, Molina visited Ader's store several times. Ader had made marginal progress, but her store continued to fall below CVS standards. Accordingly, in mid-March Molina issued Ader a "2nd Final warning on job performance."

Ader believed Molina was not giving her an adequate opportunity to correct the deficiencies, and therefore requested to step down as a store manager and become an assistant manager. Ader's request was denied because Hayde stated he wanted to see Ader either succeed or find other employment.

5

In early April 2009, Molina transferred Ader to a smaller store (Market store) with fewer employees and less inventory to give her a fresh start in a more manageable environment. Ader claims Molina told her the Market store was "'dialed in,'" meaning it was well organized and well run. Molina denied making that statement because the Market store had no manager at the time Ader was transferred and the two assistant managers were struggling to run the store adequately. Ader also claims the Market store was plagued with problems when she arrived, and CVS acknowledged the store recently failed a store audit.

Upon transferring Ader, Molina assigned her two "'buddy managers'"— successful managers at other stores who could help Ader identify and address issues in her new store. Over the next couple months, one of these managers made several visits to the Market store to evaluate Ader's performance and advise her on how to improve her performance. Unfortunately, Ader continued to have the same problems and failed to correct the many deficiencies her buddy manager repeatedly pointed out regarding the cleanliness, merchandising, and inventory for the store.

Ader claims she successfully attacked the problems that existed at the Market store because she improved the store's audit score. The store still failed the audit, however, and the prior score covered a period when the store operated without a manager. The prior score for the Market store was 64.38 and the May 28, 2009 score Ader received was 77.33; the minimum score to pass an audit is 85.

Two days before the audit, Molina gave Ader another formal write-up for her deficient performance. The write-up again listed numerous areas in which Ader was failing to perform up to CVS standards in managing her store, and concluded, "This will be [Ader's] final warning; any further incidents of poor job performance will result in Termination." Upon learning of the failed audit, Hayde e-mailed Molina and Brown stating, "I think we are done with [Ader] at this point." CVS terminated Ader in June 2009.

Ader filed this action in January 2010. The operative first amended complaint alleged claims against CVS for discrimination in violation of the FEHA based on age, race, and gender, and wrongful termination in violation of public policy.[1]

CVS moved for summary judgment or alternatively summary adjudication, arguing Ader's poor job performance prevented her from establishing a prima facie discrimination case and also provided a legitimate, nondiscriminatory reason for terminating Ader. Ader argued she did not have to show satisfactory job performance to establish a prima facie discrimination case because showing she was qualified for the position was sufficient, and the evidence she presented showed her job performance was only a pretext to conceal CVS's true reason for firing Ader — her age, race, and gender.

According to Ader, an inference of discriminatory intent was created by evidence showing (1) CVS did not follow its own policies in terminating her employment; (2) Ader's Latina supervisor (Molina) replaced her at both the Adams and Market stores with young, Hispanic males; (3) Ader's replacement at the Adams store received additional labor hours to address the store's problems that Molina denied to Ader at both the Adams and Market stores; (4) Ader's replacement at the Adams store failed to improve the store; (5) CVS fired Ader after she improved the Market store's performance; and (6) CVS received an anonymous complaint that Molina had told another manager she was past her prime and should look for other employment, and

---

[1]     The first amended complaint also alleged claims against CVS for retaliation in violation of public policy, hostile environmental harassment, wage and hour violations, and violation of Labor Code section 226.7, but Ader has abandoned those claims. At the hearing in the trial court on CVS's summary judgment motion, Ader conceded the harassment, wage and hour, and Labor Code claims. In her opening brief, Ader states she does not challenge the trial court's ruling granting summary judgment on her retaliation claim. Accordingly, only the discrimination and wrongful termination claims are at issue.

Molina also had said she thought a younger male employee would look good without his shirt.

The trial court granted CVS's motion and entered judgment in CVS's favor. Ader timely appealed.

## II

## DISCUSSION

A.      *Governing Principles on Employment Discrimination and Summary Judgment*

The FEHA protects employees from discrimination based on a wide variety of characteristics, including age, race, and gender.[2] (Gov. Code, § 12940, subd. (a).) In analyzing an employee's claim for unlawful discrimination, California courts have adopted the three-stage, burden-shifting test the United States Supreme Court established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159 (*Wills*).)

"This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." (*Guz*, *supra*, 24 Cal.4th at p. 354.)

---

[2]      Ader does not separately challenge the trial court's ruling on her claim for wrongful termination in violation of public policy. Instead, she argues the trial court erred in granting summary judgment on that claim for the same reasons it erred in granting summary judgment on her discrimination claim. Because the two claims stand or fall together, we do not separately address the wrongful termination claim. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229 [when plaintiff does not argue an independent basis to support claim for wrongful termination in violation of public policy, that claim fails when underlying FEHA claim fails].)

8

"At trial, the *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination. This step is designed to eliminate at the outset the most patently meritless claims, as where the plaintiff is not a member of the protected class or was clearly unqualified, or where the job he sought was withdrawn and never filled. [Citations.] While the plaintiff's prima facie burden is 'not onerous' [citation], he must at least show "'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion . . . .' [Citation]." [Citation.]' [Citations.]" (*Guz*, *supra*, 24 Cal.4th at pp. 354-355.) If the plaintiff meets this initial burden, a rebuttable presumption of discrimination arises. (*Id*. at p. 355.)

"[T]he burden [then] shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer],' that its action was taken for a legitimate, nondiscriminatory reason. [Citations.]" (*Guz*, *supra*, 24 Cal.4th at pp. 355-356.) "This likewise is not an onerous burden [citation], and is generally met by presenting admissible evidence showing the defendant's reason for its employment decision [citation]." (*Wills*, *supra*, 195 Cal.App.4th at p. 160.)

"Finally, if the defendant presents evidence showing a legitimate, nondiscriminatory reason, the burden again shifts to the plaintiff to establish the defendant intentionally discriminated against him or her." (*Wills*, *supra*, 195 Cal.App.4th at p. 160.) The plaintiff may satisfy this burden "'by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.' [Citations.]" (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1529, original italics (*McGrory*).)

9

The trial court decides the first two stages of the *McDonnell Douglas* test as questions of law. If the plaintiff and defendant satisfy their respective burdens, the presumption of discrimination disappears and the question whether the defendant unlawfully discriminated against the plaintiff is submitted to the jury to decide whether it believes the defendant's or the plaintiff's explanation. (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 201.)

"'"[W]e must keep in mind that the *McDonnell Douglas* test was originally developed for use at trial [citation], not in summary judgment proceedings. . . .'" [Citation.]" (*Sandell v. Taylor-Listug, Inc.* (2010) 188 Cal.App.4th 297, 309 (*Sandell*).) California's summary judgment law places the initial burden on a moving party defendant to either negate an element of the plaintiff's claim or establish a complete defense to the claim. (Code Civ. Proc., § 437c, subd. (p)(2).) The burdens and order of proof therefore shift under the *McDonnell Douglas* test when an employer defendant seeks summary judgment. (*Wills*, *supra*, 195 Cal.App.4th at p. 160; *Sandell*, at p. 309.) An employer defendant may meet its initial burden on summary judgment, and require the employee plaintiff to present evidence establishing a triable issue of material fact, by presenting evidence that *either* negates an element of the employee's prima face case, or establishes a legitimate nondiscriminatory reason for taking the adverse employment action against the employee. (*Ibid.*)

"[T]o avoid summary judgment [on the second of these two grounds], an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." (*Hersant v. Dept. of Social Services* (1997) 57 Cal.App.4th 997, 1004-1005 (*Hersant*); *Sandell*, *supra*, 188 Cal.App.4th at p. 314.)

10

"It is not enough for the employee simply to raise triable issues of fact concerning whether the employer's reasons for taking the adverse action were sound. What the employee has brought is not an action for general unfairness but for . . . discrimination. While, given the inherent difficulties in showing discrimination, the burden-shifting system established by the Supreme Court is a useful device to facilitate the adjudication of claims of discrimination, it ultimately, however, does not change what the employee must prove. In our judgment the fact an employee is the member of a protected class and has demonstrated triable issues concerning the appropriateness of the adverse action taken does not so readily demonstrate a discriminatory animus that it is alone sufficient to establish the fact of discrimination or alone sufficient to avoid summary judgment." (*Hersant*, *supra*, 57 Cal.App.4th at p. 1005.)

"[D]isbelief of an Employer's stated reason for a termination gives rise to a compelling inference that the Employer had a different, unstated motivation, but it does not, without more, reasonably give rise to an inference that the motivation was a prohibited one." (*McGrory*, *supra*, 212 Cal.App.4th at pp. 1531-1532.) Indeed, "'[p]roof that the employer's proffered reasons are unworthy of credence may "considerably assist" a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons. [Citation.] Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions.' [Citation.]" (*Id*. at p. 1531, original italics.)

"We review the trial court's decision to grant summary judgment de novo. We are not bound by the trial court's stated rationale, but independently determine whether the record supports the trial court's conclusion that plaintiff's discrimination claim failed as a matter of law." (*Wills*, *supra*, 195 Cal.App.4th at p. 161.)

11

B.	*The Trial Court Properly Granted CVS Summary Judgment*

CVS argued it met its initial burden by satisfying both prongs recognized under the *McDonnell Douglas* framework. First, CVS argued Ader's discrimination claim failed as a matter of law because her poor job performance prevented her from establishing a prima face discrimination case. Second, CVS argued Ader's poor job performance established a legitimate, nondiscriminatory reason for firing her. We consider each argument separately.

1.	We Need Not Determine Whether Ader Can Establish a Prima Facie Discrimination Case

The parties disagree on whether Ader's prima facie discrimination case required her to show satisfactory job performance, or merely to show she was qualified for her store manager position.[3] A handful of California cases have included satisfactory job performance as an essential element of a prima facie discrimination case without any analysis or discussion. (See, e.g., *Guz, supra*, 24 Cal.4th at p. 355; *Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736, 742; *Muzquiz v. Emeryville* (2000) 79 Cal.App.4th 1106, 1116; *Hersant, supra*, 57 Cal.App.4th at p. 1003; *Mixon v. Fair Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, 1318.) Only two California cases, however, have considered the issue CVS and Ader present.

Both cases include satisfactory job performance as an essential element of the prima facie case, but one opinion viewed this element as merely a qualification requirement and the other emphasized satisfactory job performance was not an element of every prima facie discrimination case. (*Sandell, supra*, 188 Cal.App.4th at pp. 321-322; *Caldwell, supra*, 41 Cal.App.4th at pp. 199-200 & fn. 6.) In *Sandell*, the Court of Appeal

---

3	The other elements of the prima facie case upon which CVS and Ader agree are (1) the employee was a member of a protected class; (2) the employee suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (3) some other circumstance suggesting discriminatory motive. (*Guz, supra*, 24 Cal.4th at p. 355.)

12

concluded "a plaintiff must demonstrate some basic level of competence at his or her job in order to meet the requirements of a prima facie showing, [but] the burden-shifting framework established in *McDonnell Douglas* compels the conclusion that any measurement of such competency should, to the extent possible, be based on objective, rather than subjective, criteria." (*Sandell*, at p. 322.) As the *Sandell* court explained, subjective criterion for job performance become relevant in the later stages of the *McDonnell Douglas* framework when the reasons for the adverse employment action are considered. (*Ibid*.) In *Caldwell*, the Court of Appeal observed, "Whether the second element of a plaintiff's prima facie case of employment discrimination is described as 'qualification for the position' or 'satisfactory job performance,' it is clear that, where a plaintiff claims not that he was a model employee but only that other employees with equivalent foibles did not suffer his fate, an employer cannot prevail simply by citing deficiencies in the plaintiff's employment record." (*Caldwell*, at p. 200, fn. 6.)

Many federal cases also have considered this same issue under both federal and California law. Like the California cases, several federal cases include satisfactory job performance as an essential element of a prima facie discrimination case without any analysis or discussion. (See, e.g., *Cornwell v. Electra Central Credit Union* (9th Cir. 2006) 439 F.3d 1018, 1028; *Godwin v. Hunt Wesson, Inc.* (9th Cir. 1998) 150 F.3d 1217, 1220-1221; *Crawford v. MCI Worldcom Communications, Inc.* (S.D. Cal. 2001) 167 F.Supp.2d 1128, 1132-1133.) Others, however, refuse to consider poor job performance as an element of the prima facie case and instead consider it in the later stages of the *McDonnell Douglas* framework as a legitimate nondiscriminatory reason for the adverse employment action. These cases emphasize the elements of a prima facie discrimination showing necessarily vary with the specific facts and claims of each case. (See, e.g., *Aragon v. Republic Silver State Disposal, Inc.* (9th Cir. 2002) 292 F.3d 654,

13

659-660; *Davenport v. Riverview Gardens School Dist.* (8th Cir. 1994) 30 F.3d 940, 944; *Medina v. Multaler, Inc.* (C.D. Cal. 2007) 547 F.Supp.2d 1099, 1123-1124, 1126-1127.)[4]

California courts similarly recognize "[t]he specific elements of a prima facie [discrimination] case may vary depending on the particular facts." (*Guz*, *supra*, 24 Cal.4th at p. 355.) In *Hersant*, the Court of Appeal explained, "Given the varying nature of the problem, it is impossible to make an exact, all-inclusive statement of the elements of a prima facie . . . discrimination case applicable in all situations. [Citations.] The general requirement is that the employee offer circumstantial evidence such that a reasonable inference of . . . discrimination arises." (*Hersant*, *supra*, 57 Cal.App.4th at p. 1002; *Sandell*, *supra*, 188 Cal.App.4th at p. 310.)

We need not decide whether CVS could meet its initial burden on summary judgment by showing Ader's poor job performance prevented her from establishing a prima facie discrimination case. As explained above, negating an essential element of Ader's prima facie case is not the only way CVS could meet its initial summary judgment burden. CVS also could satisfy its initial burden by showing a legitimate nondiscriminatory reason for terminating Ader. (See *Guz*, *supra*, 24 Cal.4th at p. 357 ["We need not resolve the 'prima facie burden' issue, for an alternative analysis disposes of Guz's cause of action"].)

---

[4] Ader also cites *Damon v. Fleming Supermarkets of Fla., Inc.* (11th Cir. 1999) 196 F.3d 1354, as a case that does not require a discrimination plaintiff to show satisfactory job performance as part of the prima facie case. *Damon*, however, relies exclusively on 11th Circuit precedent that modifies the *McDonnell Douglas* framework when the employee held the position for an extended period of time. Ader does not cite any authority from California or any other federal circuit that supports modifying the *McDonnell Douglas* framework in this manner. We express no opinion on this approach.

14

2.     Ader Failed to Establish a Triable Issue on Whether Her Poor Job Performance Was CVS's Legitimate Nondiscriminatory Reason for Terminating Her Employment

To show it terminated Ader for the legitimate nondiscriminatory reason that she failed to perform her job adequately, CVS submitted extensive evidence, including Ader's deposition testimony; declarations from Hayde and Brown; deposition testimony by Hayde, Brown, and Molina; and portions of Ader's personnel file. This evidence established Ader's responsibilities as a store manager; CVS's standards and expectations for store managers; Ader's repeated failures to maintain the Adams and Market stores up to those standards during the six months before her termination; the many attempts Molina and others made to educate Ader about CVS's standards and what she should do to meet them; the formal write-ups and other informal warnings Ader received about her performance; and Ader's termination. Ader concedes this evidence satisfied CVS's initial summary judgment burden to establish a legitimate, nondiscriminatory reason for her termination.

The burden therefore shifted to Ader to present evidence from which a reasonable trier of fact could conclude CVS engaged in intentional discrimination. To do so, Ader had to present "'substantial evidence'" showing (1) CVS's stated reason for firing her was untrue or pretextual; (2) CVS acted with a discriminatory animus in terminating her; or (3) a combination of the two. (*Wills*, *supra*, 195 Cal.App.4th at p. 171; *Hersant*, *supra*, 57 Cal.App.4th at pp. 1004-1005; *Sandell*, *supra*, 188 Cal.App.4th at p. 314.) To show CVS's stated reason was untrue or pretextual, Ader had to "'"demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [CVS's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' . . . and hence infer 'that [CVS] did not act for the [asserted] nondiscriminatory reasons.' [Citations.] . . ." [Citations.]' [Citation.]" (*Sandell*, at p. 314; *Hersant*, at p. 1005.)

15

Ader failed to establish a triable issue on whether CVS's stated reason for firing her was untrue or pretextual because she failed to present any evidence that contradicted CVS's evidence showing it fired her for her poor job performance. In her separate statement, Ader claimed some of the facts CVS offered regarding her poor performance were disputed, but the evidence Ader cited fails to establish a triable issue. The principle evidence on which Ader relies is her own declaration, but her declaration is highly conclusory and fails to establish the facts Ader identifies in her separate statement as creating a conflict in the evidence. (See *Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 166 (*Yuzon*) ["'An issue of fact can only be created by a conflict of evidence. It is not created by "speculation, conjecture, imagination or guess work." [Citation.] Further, an issue of fact is not raised by "cryptic, broadly phrased, and conclusory assertions" [citation], or mere possibilities [citation]'"].)

For example, one of the undisputed facts CVS offers is that Molina coached Ader six times during January and early February 2009 regarding store cleanliness, merchandising, and inventory control. To establish this fact, CVS provides a memorandum Ader signed to acknowledge the date of each of these coaching sessions and the topics discussed at each session. Despite signing the memorandum, Ader disputes this fact in her separate statement by claiming she "was never verbally coached by Molina and received her first and final written warning on February 19, 2009." To support this purported fact, Ader cites paragraph 10 of her declaration, which states, "Prior to February 2009, I had never received a performance counseling or discipline." This statement fails to establish a triable issue because it (1) is conclusory; (2) does not dispute Molina coached Ader in February 2009; and (3) fails to explain why Ader signed the memorandum acknowledging the coaching sessions if they never occurred. (See *Yuzon*, *supra*, 116 Cal.App.4th at p. 166.)

The most glaring example of the shortcomings in Ader's evidence is her repeated reliance on paragraph 18 of her declaration to establish a wide array of facts,

16

including "Hayde believed that the store was not in good shape, but did not believe that the store was in such disarray as Defendant describes"; "Hayde never asked Plaintiff why the store was in such poor condition"; "Hayde's visit with Molina, Brown, and Patel was a facade and they all left before giving Plaintiff a chance to explain herself or discuss any potential solutions"; "Molina did not work with Plaintiff to ensure she understood the responsibilities of a store manager"; and "the content of [a March 2, 2009 write-up] is false and Plaintiff's store was greatly improved and did not possess the majority of the deficiencies listed."

Paragraph 18 establishes *none* of these facts and merely states, "I was in disbelief and shocked that I received this February 19, 2009 write-up. The contents within the write-up were extremely exaggerated and some allegations false. Moreover, any issues with the store resulted from the inability to use the labor hours that had been budgeted to the store."[5] Nothing else in Ader's declaration is sufficient to establish any of the foregoing facts or otherwise create a triable issue on whether Ader's poor job performance was CVS's legitimate nondiscriminatory reason for terminating Ader. Ader identifies facts that she claims are in dispute, but fails to present evidence establishing those facts.

To contradict CVS's evidence, Ader also offered the satisfactory performance reviews she received when she worked for Sav-On and when Schiefer was her district manager. This evidence fails to establish a triable issue because it does not conflict with CVS's evidence, which focused on how Ader inadequately performed her job during the six months leading up to her termination. Ader cannot create a triable issue on her performance during that six-month period without some evidence to show she performed competently at some point during that period. Although she tries to

---

[5] The trial court also sustained CVS's evidentiary objection to the middle sentence of paragraph 18 and Ader does not claim the court abused its discretion in doing so.

17

minimize CVS's evidence, Ader presents nothing to show her stores met CVS standards during the relevant time period or that she was held to a different standard than other store managers.

Because Ader failed to establish a triable issue on whether CVS's stated reason for firing her was untrue or pretextual, she had to present substantial evidence showing CVS nonetheless acted with a discriminatory animus when it fired her.[6] (*Wills*, *supra*, 195 Cal.App.4th at p. 171; *Hersant*, *supra*, 57 Cal.App.4th at pp. 1004-1005; *Sandell*, *supra*, 188 Cal.App.4th at p. 314.) Ader contends an inference CVS acted with a discriminatory animus arises from the circumstances surrounding how CVS and Molina treated her during the six-month period leading up to her termination. Ader acknowledges none of the following facts or circumstances is alone sufficient to establish CVS's discriminatory animus, but she contends a triable issue is established when these facts and circumstances are considered together. We disagree.

The first circumstance Ader cites to support an inference CVS and Molina acted with discriminatory animus is that Molina, as Ader's younger Latina supervisor, replaced Ader, a 50-year-old Caucasian woman, with young, Hispanic men at both the Adams and Market stores. The age, race, and gender of Ader's replacements, however, do not change the fact Ader failed to perform her job adequately. Ader presents no evidence to show she was held to a different standard or treated differently than any other store manager, let alone young, Hispanic men who served as store managers. To the contrary, the evidence shows Ader's replacement at the Adams store initially improved the store's performance, but it soon deteriorated to its previous condition. Molina

---

[6] If an employee asserting a discrimination claim under the FEHA cannot defeat his or her employer's proffered legitimate nondiscriminatory reasons for termination, the employee still may prevail and obtain some relief if the employee shows unlawful discrimination nonetheless was a substantial factor motivating the employer's decision. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 211, 241.)

18

responded by transferring the replacement manager to another store, just as she had done with Ader.[7]

The second circumstance Ader cites is the purported unwarranted attention Molina paid to her after becoming Ader's district manager and Molina's failure to follow "company policy and practices" in dealing with Ader. According to Ader, the inspection Molina, Hayde, and Brown made in February 2009 was "unannounced and unprecedented" because Hayde and Brown had never been to her store before and it was "common practice" for a district manager to warn a store manager the regional manager would visit the store. Ader also complains Molina failed to follow "company policy" when she gave Ader a formal write-up that said it was Ader's final warning even though Ader never before had received a write-up or warning. These contentions do not support an inference CVS and Molina acted with discriminatory animus because Ader offers nothing other than her own conclusory opinion to show the inspection, her evaluation, or any attention she received from Molina violated any policy or practice of CVS. More importantly, these contentions do not show Ader was performing adequately or change the fact her store did not meet CVS standards before or after the inspection. Nor does her evidence create an issue on whether the write-up was warranted. Ader received several more write-ups and warnings before she was fired, and Ader presented no evidence showing she was treated differently than any other store manager.

Third, Ader contends an inference of discriminatory animus arises from Molina transferring Ader to the Market store under the pretext the store was "dialed in" and would make Ader's job easier, when the store actually had just failed an audit.

---

[7]    Ader also presented photographs of the Adams store after she was transferred and contends they show performance deficiencies by the store manager for which she received a write-up. Ader, however, does not contend or present any evidence to show the store manager did not receive a write-up and, as stated above, the evidence shows he too was transferred. Moreover, Ader fails to present any evidence regarding when the photographs were taken other than "after" she was transferred.

Although Molina denies she ever represented the Market store was "dialed in," neither that disagreement nor the transfer itself supports an inference of discriminatory animus because Ader fails to present any evidence to show the Market store was in worse condition than the Adams store, or that Molina did not believe the Market store provided Ader a better chance to succeed than the Adams store. (See *Wills*, *supra*, 195 Cal.App.4th at pp. 170-171 ["'It is the employer's honest belief in the stated reasons for [the employment action] and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case'"].)

The fourth circumstance Ader cites occurred when Molina allowed Ader's replacement at the Adams store to use "allotted but unused labor hours" to remedy the Adams store's problems, but refused to allow Ader to use "allotted but unused labor hours" to address problems at either the Adams or Market stores. Ader, however, fails to provide any evidence that supports this contention. Ader relies on her own declaration and a one-page computer report, but nothing in that report's confusing codes, abbreviations, and numbers clearly shows the Adams store was allowed to use more labor hours after Ader left, and Ader does not explain what any of the codes, abbreviations, and numbers mean. Moreover, Ader ignores that Molina brought in a team of employees and managers immediately after Hayde, Brown, and Molina inspected the Adams store, and that team spent an entire day cleaning, stocking the shelves, and organizing the store for Ader.

Fifth, Ader contends an inference of discriminatory animus arises from CVS's decision to terminate her despite her success in addressing the Market store's problems and raising its audit score. Ader, however, provides no evidence other than her conclusory declaration to show she succeeded in addressing the Market store's problems. She also ignores that the Market store's audit score under her management was still well below a passing score, and the Market store's previous audit score was for a period during which it had no manager. Moreover, Ader's buddy manager who visited her

20

weekly at the Market store reported Ader was performing below standards and failed to correct many of the specific deficiencies he pointed out to her.

Finally, Ader contends the foregoing circumstances support an inference of discriminatory animus when considered in conjunction with an anonymous complaint CVS's Human Resources Department received about Molina telling an "older" manager, "You are passed [sic] your prime and need to look for other employment." The evidence shows CVS received this complaint around the same time it terminated Ader, but Ader fails to present any evidence to corroborate that Molina actually made this comment or to show the context in which this comment was purportedly made. Ader also ignores that Hayde suggested terminating Ader, not Molina.

Discriminatory remarks that are not part of the employment decision at issue have little probative value, especially without evidence showing the context in which the remarks were made. Nonetheless, the remarks may be considered if they "corroborate direct evidence of discrimination or gain significance in conjunction with other circumstantial evidence. . . . Thus, a trial court must review and base its summary judgment determination on the totality of evidence in the record, including any relevant discriminatory remarks." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 541.)

We have reviewed the totality of the evidence in the record, including Molina's purported remark, and conclude the evidence does not establish a triable issue on whether CVS and Molina acted with a discriminatory animus.[8] "[A] plaintiff's 'suspicions of improper motives . . . primarily based on conjecture and speculation' are not sufficient to raise a triable issue of fact to withstand summary judgment. [Citation.]" (*Kerr v. Rose* (1990) 216 Cal.App.3d 1551, 1564.) Here, Ader offers nothing but

---

[8] We also consider the anonymous complaint that Molina allegedly said she thought a younger male employee would look good without his shirt, but we find it to have even less probative value because it has nothing to do with the decision to fire Ader and also lacks any corroboration or evidence to explain the context in which it was made.

21

conjecture and speculation that CVS and Molina unlawfully discriminated against her based on her age, race, or gender. None of the evidence Ader offers would allow a reasonable fact finder to conclude CVS and Molina unlawfully discriminated against Ader, and therefore we affirm the trial court's decision granting CVS summary judgment.

## III

### DISPOSITION

The judgment is affirmed. CVS shall recover its costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

22